UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                    Case No. 13-47986

RANDY K. DZIERZAWSKI,                   Chapter 7

                Debtor.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING VULPINA LLC'S MOTION FOR DERIVATIVE STANDING
TO PURSUE FRAUDULENT TRANSFER CLAIMS**

**I. Introduction**

This case is before the Court on a motion by creditor Vulpina LLC ("Vulpina") entitled "Vulpina LLC'S Motion for Derivative Standing To Pursue Fraudulent Transfer Claims" (Docket # 175, the "Motion"). Vulpina seeks an order granting it derivative standing to pursue, on behalf of the bankruptcy estate, fraudulent transfer claims against Kimberly Dzierzawski, the Debtor's wife, relating to the Debtor's purported prepetition transfer of 99% of his 100% membership interest in Vinifera Wine Company, LLC.

The Debtor and Kimberly Dzierzawski filed objections to the Motion. The Chapter 7 Trustee did not object to the Motion, but rather, supports the Motion. In fact, the Trustee entered into a stipulation with Vulpina on August 11, 2014, regarding terms and conditions of Vulpina's anticipated prosecution of the claims on behalf of the bankruptcy estate.[1]

The Court held a hearing on the Motion on September 17, 2014, and took the Motion under advisement. For the following reasons, the Court will grant the Motion.

---

[1] *See* "Stipulation Between Trustee Homer W. McClarty and Vulpina LLC Regarding Vulpina's Motion for Derivative Standing To Bring Certain Fraudulent Transfer Claims" (Ex. 7 to Docket # 183).

## II. Jurisdiction

This Court has subject matter jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

This proceeding also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within this category in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## III. Discussion

### A. The Sixth Circuit requirements for derivative standing in a Chapter 7 case

In *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.)*, 555 F.3d 231, 243-45 (6th Cir. 2009), the United States Court of Appeals for the Sixth Circuit held that a bankruptcy court may grant standing to a creditor in a Chapter 7 case to pursue claims on behalf of the bankruptcy estate, when the creditor meets the requirements for derivative standing set forth in *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.)*, 66 F.3d 1436 (6th Cir. 1995). In *Gibson Group*, a Chapter 11 case, the Sixth Circuit held that the following requirements must be met for such standing to be granted:

> [A] bankruptcy court may permit a single creditor in a Chapter 11 case to initiate an action to avoid a preferential or fraudulent transfer instead of the debtor-in-possession **if the creditor: 1) has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the**

2

> **bankruptcy court; 2) has made a demand on the debtor-in-possession to file the avoidance action; 3) the demand has been refused; and, 4) the refusal is unjustified in light of the statutory obligations and fiduciary duties of the debtor-in-possession in a Chapter 11 reorganization.** We also hold that, while the creditor has the initial burden to allege facts showing that the refusal to file suit is "unjustified," the debtor-in-possession must rebut the presumption if the creditor carries its initial burden. Contrary to the district court's view, we believe that a creditor need not plead facts alleging the debtor-in-possession's reason or motive for the inaction, but may meet its burden to allege unjustified inaction through notice pleading by alleging the existence of an unpursued colorable claim that would benefit the estate. *See* Fed.R.Civ.P. 8; Fed.R.Bankr.P. 7008 (making Fed.R.Civ.P. 8 applicable in bankruptcy adversary proceedings). If the debtor-in-possession gives no reason for its inaction when a demand is made, the bankruptcy court may presume that its inaction is an abuse of discretion ("unjustified") if the complaint alleges a colorable claim.

*Gibson Group*, 66 F.3d at 1438-39 (emphasis added). Later in its opinion, the Sixth Circuit stated the fourth of the requirements quoted above in slightly different words:

> In conclusion, we hold that a creditor or creditors' committee may have derivative standing to initiate an avoidance action where: 1) a demand has been made upon the statutorily authorized party to take action; 2) the demand is declined; 3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court, and **4) the inaction is an abuse of discretion ("unjustified") in light of the debtor-in-possession's duties in a Chapter 11 case**. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

*Id.* at 1446 (emphasis added). Thus, the court equated "unjustified" with and "abuse of discretion" in this context.

Later, in *Trailer Source*, the Sixth Circuit summarized the *Gibson Group* requirements for derivative standing by stating *Gibson Group's* "colorable claim . . ." requirement in a different way:

> In *Gibson Group*, we held that a party moving for derivative standing must show that: (1) a demand was made on the trustee (or debtor-in-possession) to act, (2) the trustee (or debtor-in-possession) declined, (3) **a colorable claim exists that would benefit the estate**, and (4) the trustee's (or debtor-in-possession's) inaction was an abuse of discretion. 66 F.3d at 1446.

*Trailer Source*, 555 F.3d at 244-45 (emphasis added). Thus, the difference is that *Gibson Group* stated the "colorable claim" requirement as this: "the creditor . . . has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court" or "a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court;" while *Trailer Source* stated this requirement simply as "a colorable claim exists that would benefit the estate."

Despite this wording difference, it is clear that the Sixth Circuit did not intend in *Trailer Source* to change the "colorable claim . . ." requirement of *Gibson Group*. Rather, *Trailer Source* simply held that the *Gibson Group* requirements apply in Chapter 7 cases as well as in Chapter 11 cases. And the *Trailer Source's* summary of the *Gibson Group* requirements, quoted above, was not intended to change those requirements.

For these reasons, the Court will decide Vulpina's Motion by applying the *Gibson Group* requirements. But the Court's decision is informed by what *Trailer Source* had to say about the requirements in the Chapter 7 context.

## B. Application of the requirements

In this case, it is undisputed that Vulpina made a demand that the Chapter 7 Trustee to file and pursue the fraudulent transfer claims that Vulpina wants to pursue against Kimberly Dzierzawski, and that the Trustee declined the demand. So those two *Gibson Group* requirements are met.

The dispute concerns the other requirements. The Debtor and Kimberly Dzierzawski (the "objecting parties") argue that Vulpina has not satisfied them. The Court disagrees, as discussed below.

### 1. Vulpina "has alleged a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by [this] court."

The Court concludes that Vulpina has satisfied the *Gibson Group* requirement of "alleg[ing] a colorable claim that would benefit the estate, if successful, based on a cost-benefit analysis performed by the bankruptcy court."

#### a. "Colorable claim"

In determining whether a claim is "colorable" under *Trailer Source*, and *Gibson Group*, the Court must "look to the 'face of the complaint.'" *See Trailer Source*, 555 F.3d at 245, citing *Gibson Group*, 66 F.3d at 1439. For example, in *Gibson Group* the Sixth Circuit concluded that the Chapter 11 creditor committee's proposed complaint, seeking to avoid pre-petition transfers as preferential and fraudulent, stated a colorable claim under 11 U.S.C. §§ 547 and 548, "[o]n the face of the complaint," without requiring or considering whether evidence supported the claims stated in the complaint. *Gibson Group*, 66 F.3d at 1439. And other courts have held that a creditor's claims are "colorable" in this context if they would survive a motion to dismiss under

5

Fed.R.Civ.P. 12(b)(6). *See, e.g.*, *PW Enterprises, Inc. v. North Dakota Racing Comm'n.* (*In re Racing Services, Inc.*), 540 F.3d 892, 900 (8th Cir. 2008) (noting that "in most cases creditors will readily satisfy the colorable claim requirement, and that "a creditor's claims are colorable if they would survive a motion to dismiss.")

In this case, Vulpina attached to its Motion a copy of the First Amended Complaint it filed in the United States District Court for the Eastern District of Michigan, in an action that Vulpina filed before the Debtor filed this bankruptcy case. (Case No. 4:12-cv-15688). That detailed complaint alleged in three counts that Debtor's transfer of 99% of his interest in Vinifera Wine Co. to Kimberly Dzierzawski was a fraudulent transfer, avoidable under Michigan's version of the Uniform Fraudulent Transfer Act, Mich. Comp. Laws §§ 566.34 and 566.35.[2] The Court concludes that the claims stated in that First Amended Complaint do state plausible claims for relief that would survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *See generally Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 770-72 (Bankr. E.D. Mich. 2011)(discussing Rule 12(b)(6) standards under the U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).[3]

Debtor and Kimberly Dzierzawski, in objecting to Vulpina's Motion, do not contend otherwise. Rather, they argue that facts exist which would defeat Vulpina's proposed avoidance

---

[2] Docket # 175, Exh. 4.

[3] During the hearing on the Motion, counsel for Vulpina also stated that if granted derivative standing, Vulpina wishes to allege, as an alternative claim to its fraudulent transfer claims, that in fact the Debtor did not transfer his ownership interest in Vinifera Wine Co. to Kimberly Dzierzawski, so that the membership interest has at all times been property of the bankruptcy estate in this bankruptcy case. Vulpina did not present any draft complaint alleging this, but counsel's description of this claim during the hearing, if put on paper in a complaint, would easily satisfy the requirement of pleading of plausible claim that would survive a motion to dismiss.

claims, if Vulpina were allowed to pursue those claims. Vulpina disputes this. And it appears, from the evidence presented and argued by the parties in connection with Vulpina's Motion, that Vulpina's proposed claims against Kimberly Dzierzawski will be vigorously contested. None of this, however, is relevant to whether Vulpina has alleged a "colorable claim" within the meaning of *Trailer Source* and *Gibson Group*. Vulpina need not establish that the colorable claims that it pleads are likely to prevail ultimately, in order to meet the "colorable claim" requirement.

### b. Cost-benefit analysis

The next *Gibson Group* requirement is that the "colorable claim" that the creditor has alleged "would benefit the estate if successful, based on a cost-benefit analysis performed by the bankruptcy court. *Gibson Group*, 66 F.3d at 1438-39, 1446. The clear wording of this requirement, as stated repeatedly by the Sixth Circuit in *Gibson Group*, requires this Court to assume that Vulpina's colorable claims will be "successful," and then to determine, based on a cost-benefit analysis, whether such successful claims "would benefit the estate" in the bankruptcy case.

If Vulpina's claims were to succeed, the result would be either of the following, or a combination of both of the following: (1) a money judgment against Kimberly Dzierzawski for the value of the Debtor's 99% membership interest in Vinifera Wine Co. as of the time of the transfer; and/or (2) avoidance of the transfer, resulting in that membership interest becoming property of the bankruptcy estate, which the Chapter 7 Trustee could liquidate for the benefit of the estate and its creditors. *See* Mich. Comp. Laws §§ 566.37(1)(a); 566.38(2)(a). The first of these forms of relief would benefit the bankruptcy estate if enough of the money judgment against Kimberly Dzierzawski could be collected from her to exceed the fees and expenses of

7

obtaining that result.  The second of these forms of relief would benefit the bankruptcy estate if the membership interest in Vinifera Wine Co. has value, exceeding the fees and expenses of obtaining those assets, that the Chapter 7 Trustee could realize.  The Trustee might realize such value by selling the membership interest, or by using the bankruptcy estate's then-100% membership interest in Vinifera Wine Co. to liquidate and wind down that LLC in a way that would leave money for the bankruptcy estate.

The evidence and argument by the parties is rather scant on the collectibility of Kimberly Dziewzawski and the value of Vinifera Wine Co.  But the Court concludes that it need not require further evidence, or hold an evidentiary hearing, to determine these issues.  That is because the fee arrangement under which Vulpina proposes to prosecute the claims against Kimberly Dzierzawski, described below, is such that it cannot result in any net cost or burden to the bankruptcy estate.  Rather, it cannot possibly result in anything other than either a net financial gain for the bankruptcy estate, or at worst, no financial effect, positive or negative, on the estate.

Vulpina is a judgment creditor of the Debtor, holding an unsecured, nonpriority claim as of the bankruptcy petition date of just over $1 million ($1,060,258.69).[4]  Vulpina holds over 99% of the allowed claims in this bankruptcy case by dollar amount, excluding administrative expenses.  Before Vulpina filed its Motion, it entered into a written stipulation with the Chapter 7 Trustee, on August 11, 2014, in which these parties agreed to certain terms and conditions for Vulpina's derivative standing.  The last of these conditions concerns the fees and expenses

---

[4] *See* Vulpina's Proof of Claim, filed March 12, 2014 (Claim No. 4-1), at 1.

Vulpina would incur in prosecuting the claims, if granted derivative standing. The stipulation states, in pertinent part, the following:

> 8. Prior to filing its motion for derivative standing, Vulpina sought concurrence from Trustee's counsel, who informed Vulpina that the Trustee has no objection to Vulpina's motion for derivative standing.
>
> 9. Assuming that the bankruptcy court grants Vulpina's motion for derivative standing, counsel for Vulpina and the Trustee have agreed that Vulpina will bring its claims according to the following basic framework:
>
>> a. Vulpina will promptly file an adversary complaint in the form and substance substantially similar to the complaint filed in the Fraudulent Transfer Action. See Ex. A. Vulpina agrees to consider any additional fraudulent transfer claims identified by the Trustee.
>>
>> b. Throughout the duration of the litigation, the Trustee will retain the right to monitor Vulpina's prosecution of the claims, and Vulpina agrees to consult the Trustee on all material milestones in the litigation, including review of and consent to any settlement proposal before the filing of a Rule 9019 motion. If a dispute arises between Vulpina and the Trustee concerning actions taken or proposed to be taken by Vulpina, or should the Trustee reasonably believe that Vulpina is failing to adequately prosecute the Fraudulent Transfer Action claims, the Trustee shall have the right to bring such matters to the attention of the Bankruptcy Court for adjudication.
>>
>> c. In addition, the Trustee reserves the right to take any action that he reasonably believes is appropriate as it relates to Vulpina's litigation of the Fraudulent Transfer Action claims. For example, the Trustee reserves the right to seek approval of a settlement of Vulpina's Fraudulent Transfer Action claims if a settlement offer is made that the Trustee believes is reasonable, or to support a motion to dismiss the bankruptcy case if such a motion is brought by the Debtor.
>>
>> **d. If Vulpina succeeds in its prosecution of its Fraudulent Transfer Action claims, the Trustee agrees to**

**permit Vulpina to seek allowance of an administrative expense claim for its reasonable legal fees pursuant to section 503(b)(3)(B) of the Bankruptcy Code. The Trustee also agrees not to object to the allowance of Vulpina's administrative expense claims. Vulpina agrees that its administrative expense claims shall be subordinate to administrative expense claims of the Trustee and his counsel for legal fees and expenses. However, this subordination will only apply to the following: (i) fees and expenses the Trustee's counsel incurs through the day Vulpina files its motion for derivative standing to bring the claims in the Fraudulent Transfer Action; and (ii) fees and expenses the Trustee incurs during the pendency of the bankruptcy case.**[5]

During the hearing on the Motion, counsel for Vulpina clarified, in response to questions from the Court, that if granted derivative standing, Vulpina will bear the attorney fees and expenses incurred in prosecuting the claims, subject to its right to seek reimbursement for such attorneys fees and expenses from the bankruptcy estate, but only on the following basis:

- Under, and based only on, 11 U.S.C. §§ 503(b)(3)(B) and 503(b)(4);[6] and

---

[5] Docket # 183, Exh. 7, at ¶¶ 8,9 (emphasis added).

[6] These subsections § 503 of the Bankruptcy Code state:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including
> . . .
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by
> . . .
>
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
> . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of

10

- Such fees and expenses may not exceed the amount of funds that the bankruptcy estate actually recovers because of Vulpina's prosecution of the claims.

Given these terms, it is clear that granting derivative standing to Vulpina as requested cannot result in any net *loss* or net *cost* to the bankruptcy estate. Rather, such derivative standing can possibly result only in a net financial benefit to the bankruptcy estate, or at worst, no net financial effect, positive or negative. From the perspective of the bankruptcy estate, therefore, granting derivative standing to Vulpina will give the estate a no-risk chance of recovering additional money.

The Court concludes that because of this, the *Gibson Group* benefit-to-the-estate requirement for derivative standing is satisfied, without more. The Court concludes that the Sixth Circuit would agree with this conclusion, based upon what that court stated in *Gibson Group* and *Trailer Source*, and also because the Sixth Circuit would agree with the following holding of the Second Circuit, in the case of *Unsecured Creditors Committee v. Noyes* (*In re STN Enterprises*), 779 F.2d 901, 905-06 (2nd Cir. 1985). The Second Circuit's test for derivative standing is somewhat different than that of the Sixth Circuit. In *STN Enterprises*, the Second Circuit held that granting derivative standing to a creditors committee in a Chapter 11 case requires the bankruptcy court to examine, "on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate." *Id.* at 905 (citation omitted). In discussing this requirement, later in its opinion, the Second Circuit held as follows:

---

such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

11

> We do not mean to suggest that the court need undertake a mini-trial, *cf. Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (197 4) (no mini-trial in class actions), to determine likelihood of success in such a suit or the attendant fees and expenses involved.  But it should assure itself that there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce.  **Of course, if the creditors' committee represents that its fee arrangement with its attorney will in no event impose a net burden on the bankruptcy estate (because the committee will pay the fee and seek reimbursement only out of any recovery), then the preliminary inquiry can be limited to ascertaining whether the proposed lawsuit has a colorable basis on which to proceed.**

*Id*. at 905-06 (emphasis added).

Under this reasoning, the cost-benefit analysis is greatly simplified, and the benefit-to-the-estate requirement is satisfied, if the creditor simply alleges a colorable claim.  So it is in this case.

### 2. The Trustee's refusal to file the claims alleged by Vulpina is "unjustified," as the Sixth Circuit has defined that concept in *Trailer Source*

The final requirement for granting Vulpina derivative standing, under *Gibson Group* and *Trailer Source*, is that the Trustee's refusal to file the claims alleged by Vulpina against the bankruptcy estate was "unjustified."  During the Motion hearing, counsel for the Chapter 7 Trustee explained the Trustee's reasons for refusing Vulpina's demand to file the claims against Kimberly Dzierzawski.  Trustee's counsel indicated that a major reason was that the bankruptcy estate does not have the funds to finance an investigation of the claims and prosecute a lawsuit.  Trustee's counsel indicated that the estate has only about $12,000.00 in funds, which is not enough even to pay existing administrative expenses in this Chapter 7 case.  For these reasons,

and because Vulpina is such an large creditor in this case, the Trustee is willing to consent to Vulpina's derivative standing to prosecute the claims.

In approving the use of derivative standing in Chapter 7 cases, the Sixth Circuit in *Trailer Source* clearly indicated that when a Chapter 7 Trustee's refusal to pursue a claim is because there are inadequate funds in the bankruptcy estate to pay litigation fees and expenses, that refusal can be viewed as "unjustified":

> [T]here is circuit precedent allowing derivative standing in Chapter 7 proceedings, albeit in a pre-Bankruptcy Code case. *William B. Tanner Co. v. United States (In re Automated Bus. Sys., Inc.)*, 642 F.2d 200 (6th Cir.1981). In *Automated Business Systems*, a pre-Bankruptcy Reform Act of 1978 case, we held that a creditor had derivative standing to pursue an avoidance action when the trustee in Chapter 7 liquidation proceedings refused to bring an action because of a lack of funds in the estate. *Id.* at 201-02. We noted there that the need for derivative standing could be particularly great in the context of Chapter 7 proceedings where there may be "no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance." *Id.* at 202.
> . . .
>
> There are also substantial policy reasons for allowing derivative standing in Chapter 7 proceedings. As we noted in *Automated Business Systems*, in contrast to Chapter 11 reorganization proceedings, in Chapter 7 liquidation proceedings there are often "no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance." 642 F.2d at 202. Consequently, a trustee in Chapter 7 proceedings may decline to pursue meritorious and potentially sizeable claims simply because there are inadequate funds in the estate to pay litigation expenses.
> . . .
>
> [T]he record [in this case] indicates that the trustee declined to pursue apparently colorable — and potentially sizeable — claims in large part because of a lack of available funds to finance an investigation and possible litigation. **Just as conflicts of interest may lead to underenforcement of avoidance claims by debtors-in-possession in Chapter 11 proceedings, a lack of**

13

> **available funds may lead to underenforcement by trustees in Chapter 7 proceedings.  In this situation, we believe that bankruptcy courts should be able to authorize derivative standing for creditors willing and able to prosecute colorable claims that may enhance the value of the bankruptcy estate in Chapter 7 proceedings.**

*Trailer Source*, 555 F.3d at 243-44 (emphasis added).

Based on the reasoning in *Trailer Source* quoted above, this Court concludes that the Chapter 7 Trustee's refusal in this case to file the claims against Kimberly Dzierzawski, largely because of a lack of funds, is "unjustified."[7]

The Court notes that at least two circuits outside the Sixth Circuit apply a somewhat different test for granting derivative standing in a Chapter 7 case, when the Trustee consents to the derivative standing.  Those circuits have held that when the debtor-in-possession or the trustee consents to the creditor's standing, the creditor still must show that the proposed action is both "*necessary* and *beneficial* to the fair and efficient resolution of [the bankruptcy proceedings]'," and is "in the best interest of the bankruptcy estate."  *Racing Services, Inc.*, 540 F.3d at 902 (italics in original)(citing *Commodore Int'l Ltd. v. Gould* (*In re Commodore Int'l Ltd.*), 262 F.3d 96, 100 (2nd Cir. 2001)).

To date, however, the Sixth Circuit has not adopted these requirements.  Rather, the Sixth Circuit has applied only the *Gibson Group* requirements discussed in this opinion, above, and the Court is bound by those requirements.  In any event, event if the Court were bound to apply the

---

[7] The Trustee's counsel also stated in the hearing, in response to a question by the Court, that the Trustee has not tried to find counsel willing to represent the bankruptcy estate to prosecute the claims on a contingent fee basis.  This fact, if anything, only tends to support the Court's conclusion that the Trustee's refusal to file and prosecute the claims is "unjustified."

14

other circuits' requirements for consensual derivative standing, quoted above, the Court would find that those requirements are met in this case.

## IV. Conclusion

For the reasons stated in this opinion, the Court concludes that Vulpina has satisfied the applicable requirements for this Court to grant it the derivative standing it requests. The Court will enter a separate order granting Vulpina's Motion, on the terms stated in the stipulation between the Trustee and Vulpina, quoted above, and subject to the fee and expense reimbursement terms stated above.

**Signed on September 26, 2014**　　　　　　　　　　**/s/ Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**